# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

WAGNER ENTERPRISES, INC., d/b/a
THE JYM BAG COMPANY,

                    Plaintiff,                          No. C-04-98-LRR

vs.                                                     **ORDER**

JOHN DEERE SHARED SERVICES,
INC., f/k/a DEERE MARKETING
SERVICES, INC.,

                    Defendant.

_____

## TABLE OF CONTENTS

I.      *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    *UNDISPUTED MATERIAL FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     *STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . . . . . . 9

V.      *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.      *Count I - Jym Bag's Breach of Contract Claim* . . . . . . . . . . . . . . 11

                1.      *Indefinite terms* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                2.      *Lack of consideration* . . . . . . . . . . . . . . . . . . . . . . . . . 15

                3.      *Waiver* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        B.      *Count II - Jym Bag's Promissory Estoppel Claim* . . . . . . . . . . . . 19

VI.     *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## I. INTRODUCTION

The matter before the court is Defendant John Deere Shared Services, Inc.'s

("Deere") Motion for Summary Judgment (docket no. 16) [hereinafter "Motion"]. In this

lawsuit, Plaintiff Wagner Enterprises, Inc., d/b/a The Jym Bag Company ("Jym Bag") claims breach of a 1999 licensing agreement [hereinafter "the Contract"] and promissory estoppel. For the reasons stated below, the court grants Deere's Motion.

## II. PROCEDURAL BACKGROUND

On July 8, 2004, Jym Bag filed a Petition at Law and Jury Demand in the Iowa District Court In and For Linn County. On August 3, 2004, Deere removed the matter to this court. Deere invokes this court's diversity jurisdiction because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Jym Bag is an Iowa corporation with its principal place of business in Iowa. Deere is a Delaware corporation with its principal place of business in Illinois.

Jym Bag's Petition at Law contains two claims: a breach of contract claim and a promissory estoppel claim. Deere filed its Answer on August 4, 2004.

On June 1, 2005, Deere filed the instant Motion. On June 24, 2005, Jym Bag filed a Resistance to Defendant's Motion for Summary Judgment [hereinafter "Resistance"]. Deere filed a reply brief on July 19, 2005, and Jym Bag filed a surreply brief on July 19, 2005.

On October 25, 2005, the court held a telephonic hearing on the Motion. Jym Bag was represented by attorneys Jason M. Steffens and Stephen J. Holtman. Deere was represented by attorneys Richard J. Sapp, Michael Mihm and Angel Anna West. Finding the Motion to be fully submitted and ready for decision, the court turns to consider it.

## III. UNDISPUTED MATERIAL FACTS

Deere is a subsidiary of Deere & Company that manages Deere & Company's trademark licensing programs and its licensees. Jym Bag is a former licensee and

distributor of certain apparel items bearing the John Deere trademark and logo.  Jym Bag is in the textile decorating and screen printing business.  It creates wearable items such as sweatshirts, t-shirts, hats, jackets and other items bearing the logos of its licensors.

Deere and Jym Bag entered into the Contract on June 15, 1999.  The Contract grants Jym Bag the non-exclusive right to use the Deere trademark in order to make, distribute and sell "t-shirts, sweatshirts, and caps."  The Contract gave Jym Bag the right to sell such products to Wal-Mart, Target, and Bass Pro stores and catalogs.  In exchange for such rights, Jym Bag agreed to pay Deere royalties totaling 10% of Jym Bag's net sales for Deere-licensed products, with a minimum advanced royalty payment of $15,000 each year.  In the Contract, Jym Bag agreed to use the licensed products only in accordance with the terms of the Contract, and the Contract contains other restrictions consistent with Deere's right to control the use of its valuable trademark.

Section B of the Contract sets the term of the Contract and is at the heart of this dispute.  In relevant part, the Contract provides:

B.    Term of Agreement

6.    This Agreement shall commence on 15 June 1999.

7.    This Agreement will terminate two (2) years after the above commencement date.  The Agreement will be automatically renewed for successive one (1) year periods unless either party gives notice to the other party of its intention not to renew the Agreement at least thirty (30) days prior to the scheduled termination date of the Agreement.

8.    This Agreement may also be terminated by DEERE at any time upon the LICENSEE's

> failure to comply with any of the terms of this Agreement, provided that DEERE gives the LICENSEE written notice of the particular failure to comply with the terms of the Agreement thirty (30) days before the proposed termination date, and the LICENSEE does not cure the failure to comply with the Agreement in that thirty (30) day period.

> 9. Upon termination of this Agreement, LICENSEE shall discontinue manufacturing and selling products bearing LICENSED PROPERTIES, including products bearing images of DEERE manufactured equipment.

By its terms, the Contract contains no sell-off period which would permit Jym Bag to sell its inventory or fill confirmed orders if the Contract terminated earlier than Jym Bag anticipated.

In 2000, the parties signed two written amendments to the Contract. The first amendment allowed Jym Bag to sell Deere-licensed products at Pamida Stores and Place Department Stores. The second amendment made a new Deere trademarked logo part of the Contract.

In addition to these written amendments to the Contract, Deere and Jym Bag orally modified the Contract on various occasions. Some of those modifications allowed Jym Bag to sell to additional customers not contemplated by the Contract. Other oral modifications to the Contract allowed Jym Bag to produce and sell additional products not contemplated by the Contract. These agreements were not reduced to writing.

In addition to the Contract with Deere, Jym Bag was involved in licensing agreements with several other entities, including IH Case, GM-Chevrolet, The University

of Iowa, Iowa State University, and the University of Northern Iowa. Such agreements contained year-to-year renewal provisions, like the provision in the Contract.

The Contract was established by Deere & Company employee Jim Doyle, who is now retired. Deere is currently represented by Jeff Gredvig, Deere & Company's Director of Brand Licensing, and Mike Porter, a Licensing Specialist. Since the spring of 2001, Gredvig has managed the outgoing licensing activities of dealers and non-dealers who sell the Deere brand of products. Porter has held his position since May of 2000 and is in charge of assisting in the management of Deere's non-dealer licenses. During all relevant times, Porter was the account manager for the Jym Bag account and was the primary Deere contact with Jym Bag.

Jim Wagner founded Jym Bag thirty years ago and, at all relevant times, was the President and majority stockholder, owning 51% of Jym Bag's stock. Jim Vancura is the Vice President who owns 49% of Jym Bag's stock. Vancura has been with Jym Bag for twenty-four years and, at all relevant times, was in charge of Jym Bag's internal business operations, including its sales and finances.

In September of 2002, Jym Bag representatives Wagner and Vancura met with Deere representatives Porter and Gredvig at Deere's facilities in Moline, Illinois, to discuss the Contract, including a possible change in the year-to-year renewal provision. During this meeting, Deere informed Jym Bag that it expected its licensees, including Jym Bag, to double revenues of Deere-licensed products every five years. Deere had not previously conveyed such an expectation to Jym Bag.

On January 31, 2003, Vancura sent a letter to Porter. Vancura discussed the renewal provision of the Contract in part of the letter:

> The next item I would like to discuss is our licensing agreement. I also briefly mentioned this on our visit to

> Moline. My concern is the fact that this is only a yearly contract that automatically renews at the end of each year. I guess I kind of feel like a football coach who is on a year-to-year contract. In other words not real secure. Our company has put a great deal into this license agreement, and it would be nice to be on more stable ground. Do you do a year-to-year contract with most of your licensees or does it vary? Anyway could you review this situation and let me know what can be done. I would sincerely appreciate your efforts.

Deere did not initially respond to Vancura's concerns.

Jym Bag representatives called and emailed Porter after writing the January 31, 2003 letter to remind Porter of Jym Bag's concerns about the year-to-year renewal provision in the Contract. Porter informally responded to the letter by telephoning Jym Bag representatives in March or April of 2003. Although Porter addressed Jym Bag's concerns over the renewal provision of the Contract, the concerns were not resolved.

Sometime in early-2003 to mid-2003, the parties again met at Deere's facilities in Moline.[1] Jym Bag was represented by Wagner and Vancura, and Deere was represented by Porter. The three first had a meeting in a conference room in Porter's office and then they went to lunch in the Deere cafeteria. During lunch, Wagner and Vancura raised the issue of the year-to-year renewal clause in the Contract. In response, Porter stated either "I will tell you that unless you just totally screw up it won't be canceled" or "I would tell

---

[1] The record shows that the parties agree there was such a meeting, but neither party is certain of the meeting date. Jym Bag representatives believe the meeting took place in either March, April or July of 2003. The exact date of the meeting is not material to the resolution of the Motion.

you that unless you just totally screw up, it's an automatic thing to renew."[2] Neither form of the statement was ever memorialized in any written document or correspondence. Moreover, Jym Bag never confirmed that Porter made such oral modification in any follow-up writing or email.

After Porter made the statement, Jym Bag continued to increase its efforts to grow the Deere-licensed products portion of its business.[3] Jym Bag increased its design offerings for Deere-licensed products in its catalog, spent more time in development of designs, increased the size of its catalog, increased the number of potential customers it called-upon and increased its Deere-licensed product offerings.

On April 19, 2004, Deere gave Jym Bag written notice of Deere's intention not to renew the Contract effective June 15, 2004. The letter was addressed to Wagner and authored by Porter. It provides, in part:

> After a great deal of review and discussion, we have decided not to renew the License Agreement between [Jym Bag] and Deere & Company. In accordance with section B (Term of Agreement), paragraph 7, this letter serves as our written notification. The license will terminate on June 15, 2004.
>
> Per our previous discussions, we feel that further continuance of the license will indeed conflict with the broad apparel strategy we're beginning to execute.

---

[2] Although Deere is preserving its right to argue at trial that Porter did not make either form of the statement, for purposes of the Motion, Deere admits that Porter made the statement regarding the Contract at the lunch meeting.

[3] Between 1999 and 2003, Jym Bag steadily increased its sales of Deere-licensed products. For example, in 2000, Deere-licensed products sales were approximately 13% of Jym Bag's business and they were approximately 62% of Jym Bag's business in 2003.

> The license does not address a sell-off period, however, we wish to extend a 90 day sell-off period for you to deplete your current John Deere inventory and fulfill any existing orders. Therefore, all John Deere goods should be sold and delivered by September 14, 2004. A final royalty statement should be made to us by October 31, 2004.

On April 26, 2004, Vancura wrote a four-page letter to Gredvig vigorously objecting to the non-renewal. The thrust of the letter is that Deere-licensed products had become such a large part of Jym Bag's revenues that termination of the Contract would mean that Jym Bag would go out of business. In this letter, Vancura also stated: "[W]hen we were in Moline in 2003, I again brought up [the contract extension topic], and Mike [Porter] said to us: As long as our contract was on an automatic yearly renewal, he did not see any reason to change the contract."

In response to Vancura's letters, Deere requested Jym Bag provide certain financial information. In a letter dated May 4, 2004, Jym Bag provided Deere with the requested financial information. Jym Bag did not allege any oral modifications to the renewal provision of the Contract in its May 4, 2004 letter to Deere.

Jym Bag requested an extension of the sell-off period beyond the original sell-off date of September 14, 2004. On May 17, 2004, Deere acquiesced to the requested extended sell-off period in a letter agreement. In the letter agreement, Jym Bag acknowledged the Contract would be terminated on June 15, 2004. The letter is addressed to Wagner and provides:

> After receiving the letters and information from Jim Vancura dated April 26 and May 4, 2004, we have decided to extend the term of the sell-off period. Instead of the 90-day sell-off

8

period originally proposed in my letter dated April 12, 2004,[4] we will extend the sell-off period until February 28, 2005. This will give you a term in which to fulfill the commitments outlined in Mr. Vancura's May 4th letter through the Spring 2005 season.

*This letter shall serve as an agreement between Deere & Company and Jym Bag Company, that the license agreement will terminate on June 15, 2004.* However, Jym Bag Company shall be entitled to fulfill the commitments outlined in the attached documents . . . . Any other customers or orders that fall outside of those outlined in either of the attached documents are strictly prohibited. The terms of the license shall be followed during the sell-off period. Only those licensed products for which there has been a documented approval may be sold. It is agreed that the customers on the attached documents shall take receipt of all shipments of said licensed products no later than February 28, 2005. Any violation under the terms of the license agreement, or those outlined in this letter, will result in an immediate revocation of the sell-off period.

This letter shall constitute an amendment to the license agreement between Deere & Company and Jymbag Company. This agreement shall be binding on both parties as evidence [sic] by their signatures set out below.

(emphasis added). The letter agreement is signed by Porter and Wagner.

## IV. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when the record shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir.

---

[4] The parties agree that the non-renewal letter was dated April 19, 2004, and not April 12, 2004.

2005).  An issue of fact is "genuine" if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods*, 409 F.3d at 990 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is material when it is a fact "'that might affect the outcome of the suit under the governing law . . . .'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248).  In considering a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus.*, 475 U.S. at 587-88. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* at 587.

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 394 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## V. LEGAL ANALYSIS

The parties do not dispute that Iowa law should be applied to both of Jym Bag's claims.[5] *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (determining federal courts whose jurisdiction is based solely on diversity must apply state, rather than federal, substantive law in order to prevent parties from forum shopping). Therefore, the court will apply Iowa law.

### A. Count I - Jym Bag's Breach of Contract Claim

In Count I of the Petition at Law, Jym Bag argues Deere orally modified the Contract and then breached it. Jym Bag alleges the Contract, as modified, provides that Deere could only terminate the Contract for cause. It further alleges Jym Bag performed all of its obligations under the Contract and sustained damages as a result of Deere's breach. Deere, on the other hand, argues that the Contract was not modified by the discussions at the lunch meeting and, therefore, as a matter of law, the Contract was not breached.

The complaining party in a breach of contract action must prove the following elements:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

---

[5] The Contract provides: "This Agreement shall be interpreted according to the laws of the State of Illinois." However, because the choice of law provision in the Contract merely governs the *interpretation* of the Contract, the limited choice of law provision has no impact on whether the contract was modified or whether Jym Bag's promissory estoppel claim survives summary judgment.

*Med. Assocs. Health Plan, Inc. v. CIGNA Corp.*, No. C04-1025-LRR, 2005 WL 2473661, at *3 (N.D. Iowa Oct. 6, 2005) (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224-25 (Iowa 1998)).

However, before this court may determine whether there was a breach of contract, it must determine whether the Contract was modified by oral agreement. In other words, the court must first determine whether the undisputed facts, viewed in the light most favorable to Jym Bag, show that an enforceable oral modification was made to the Contract during the parties' lunch meeting in Moline.

"A written contract may be modified by a subsequent oral agreement which has the essential elements of a binding contract." *Berg v. Kucharo Const. Co.*, 21 N.W.2d 561, 567 (Iowa 1946). Parties modify a contract "where contracting parties incur different duties and obligations from those in their original contract." *Quigley v. Wilson*, 474 N.W.2d 277, 281 (Iowa Ct. App. 1991). An oral amendment to a written contract is valid when it is accepted and acted upon by the parties. *Gordon v. Witthauer*, 138 N.W.2d 918, 921 (1965). Proof of a claimed oral contract must be "by evidence which is clear, satisfactory and conclusive, and not by loose and random conversations." *Ehlinger v. Ehlinger*, 111 N.W.2d 656, 659 (Iowa 1961) (citations omitted); *see also Ford v. Zuercher*, No. 04-1458, 2005 WL 2370839 (Iowa Ct. App. Sept. 28, 2005) ("Because this case involved an oral contract, proof of a claimed oral contract must be clear, satisfactory, and convincing."). "A mere preponderance of the evidence is not sufficient" to prove an oral contract. *Id.*

"Whether an oral contract existed, what its terms were, and whether it was breached ordinarily are questions for the trier of fact." *Dallenbach v. MAPCO Gas Prods., Inc.*, 459 N.W.2d 483, 486 (Iowa 1990). However, Jym Bag must be able to present sufficient evidence of the alleged modification of the Contract and its terms to ascertain what duties

and conditions were established by the modification. *See id.*; *see also Celotex Corp.*, 477 U.S. at 323 (explaining that when the party with the burden of proof fails to make a sufficient showing of an essential element of a claim, then the opposing party is "entitled to a judgment as a matter of law"). The court finds that, as a matter of law, Jym Bag has presented insufficient evidence to prevail on its breach of contract claim.

The alleged oral modification lacked definite terms and consideration and, therefore, cannot be enforced.[6]

### 1. Indefinite terms

"To prove the existence of an oral contract, the terms must be sufficiently definite for a court to determine with certainty the duties of each party, the conditions relative to performance, and a reasonably certain basis for a remedy." *Gallagher, Langlas & Gallagher v. Burco*, 587 N.W.2d 615, 617 (Iowa Ct. App. 1998). "[W]hen the terms are not definite, courts are reluctant to impose reasonable terms on contracting parties." *Id.* However, the agreement must only be certain (not absolutely certain) and unequivocal in its essential terms. *In re Price*, 571 N.W.2d 214, 216 (Iowa Ct. App. 1997). For an "oral contract to be found and enforceable, the terms must be so definitely fixed so that nothing remained except to reduce the terms to writing." *Id.*

For purposes of the Motion, the parties agree that at the lunch meeting in Moline, Porter stated either "I will tell you that unless you just totally screw up it won't be canceled" or "I would tell you that unless you just totally screw up, it's an automatic thing

---

[6]    In addition to arguing that the alleged oral modification fails for lack of definiteness of terms and lack of consideration, Deere argues that it fails for lack of mutual assent. The court will not discuss Deere's mutual assent argument, because it finds there was no oral modification of the Contract due to indefinite terms and, alternatively, due to lack of consideration.

to renew." The parties further agree that, between the time Porter made the statement and April 19, 2004 (the date Deere sent the non-renewal letter), they did not further discuss the Contract's renewal provision nor did they memorialize Porter's statement.

The court finds that Porter's statement is too indefinite to be an oral modification of the Contract. The court cannot determine the duties or conditions of the parties based upon this statement, and, thus, the alleged oral modification to the Contract is not specific enough to be enforced. It was merely an oral assurance by Deere concerning Jym Bag's performance of the Contract, and it did nothing to change the "Terms of Agreement" section of the Contract.

Jym Bag argues that the terms of the oral modification were sufficiently definite, because section B(7) of the Contract was modified by "remov[ing] Deere's right to invoke the termination provision contained in the section except for cause." It claims it was unnecessary for the parties to "lay out each circumstance that would constitute Jym Bag messing up its contractual duties" because "termination for cause" is a widely-used contractual concept. Although the court agrees that "for cause" is a widely-used contractual phrase and has legal meaning, the undisputed facts show the term "for cause" was never used by Porter or anyone at Deere. Instead, Jym Bag alleges, and Deere agrees, Porter said that if Jym Bag does not "totally screw up" the Contract would be automatically renewed. The court is mindful of the fact that the existence of a contract does not depend wholly on the words used. *See Holden v. Constr. Mach. Co.*, 202 N.W.2d 348, 361 (Iowa 1972) ("The existence of a contract . . . is to be determined not alone from words used, but in the situation, acts, and conduct of the parties, and from their situation and the attending circumstances, and by the inferences which mankind would ordinarily and reasonably draw therefrom." (quotations and citations omitted)). However, the fact that Porter did not use the words "for cause" coupled with the circumstances

surrounding the statement shows that there was no oral modification of the Contract. The undisputed record indicates Porter made the casual statement during lunch after the parties' formal meeting in the Deere conference room, there was no follow-up discussion or correspondence regarding the casual statement, and the parties' course of performance shows that they made other substantial modifications to the Contract by utilizing written amendments. Consequently, Jym Bag's argument has no merit.

The terms of the alleged oral modification become even more ambiguous and indefinite when considered in the context of the entire Contract. Jym Bag alleges the oral modification amends paragraph B(7) of the Contract so that Deere may only terminate the Contract for cause, rather than for any reason. However, such a "termination for cause" provision already exists in paragraph B(8) of the Contract. Paragraph B(8) gives Deere the option of terminating the Contract for Jym Bag's "failure to comply with any of the terms of [the Contract]." Therefore, the suggestion that Porter's statement changed paragraph B(7) of the Contract would mean that the Contract now contains a superfluous provision regarding termination for cause. *See Estate of Pearson ex rel. Latta v. Interstate Power & Light Co.*, 700 N.W.2d 333, 343 (Iowa 2005) ("We assume no part of the contract is superfluous . . . and a construction giving meaning to all its clauses is preferred."). For this additional reason, the phrase "totally screw up" is not definite enough to have formed an enforceable oral agreement.

Because Jym Bag failed to generate a triable issue of fact regarding a modification of the renewal provision of the Contract, it is appropriate to grant judgment in favor of Deere on Count I.

### 2. Lack of consideration

The court also finds that there was no consideration supporting the alleged oral modification of the Contract. Because consideration is lacking, Jym Bag is unable to

prevail on its breach of contract claim and it is appropriate to enter judgment in Deere's favor.

Iowa contract law permits the "oral modification of a written contract if adequate consideration is provided." *F.S. Credit Corp. v. Shear Elevator, Inc.*, 377 N.W.2d 227, 231 (Iowa 1985) (citing *Recker v. Gustafson*, 279 N.W.2d 744, 759 (Iowa 1979)). Consideration is a benefit to the promisor or a loss or detriment to the promissee. *Fed. Land Bank of Omaha v. Woods*, 480 N.W.2d 61, 65 (Iowa 1992). However, there is an exception to the consideration requirement: a modification that is "fair and equitable in view of circumstances not anticipated by the parties when the contract was made" does not require consideration. *Quigley*, 474 N.W.2d at 281 (citing *Recker*, 279 N.W.2d at 758).

Initially, Jym Bag argues that no consideration was necessary because there were unanticipated circumstances which made the modification fair and equitable. It argues that those circumstances were the economic recession that hit the United States in late 2000 and early 2001. Jym Bag further argues that the unanticipated circumstances include the fact that two of its major clients filed for bankruptcy, causing Jym Bag's Deere-licensed business to comprise an increasingly larger portion of its overall business. In sum, Jym Bag argues that the unanticipated circumstance which made consideration unnecessary was that Jym Bag became much more reliant on Deere's business than it expected to be when it first entered the Contract in 1999.

The court finds that the *Quigley* exception to the requirement that there be consideration to modify a contract is not applicable in this case. Neither an economic downturn nor the fact that Deere-licensed products became a large portion of Jym Bag's business are the type of "unanticipated circumstances" imagined by the Iowa Supreme Court. *Cf. Quigley*, 474 N.W.2d at 281 (finding unanticipated circumstances and requiring no new consideration when a contract for the sale of a farm was modified due,

in part, to the "drastic decrease in the value of the land coupled with the seller's concern about tax repercussions from reacquiring the land and the fact the [buyers] had not received any income from the farm for the previous year"). The chance of an economic downturn is a risk that every business must assume.

Jym Bag argues that the new benefit Deere received in exchange for its agreement to modify the year-to-year renewal provision of the Contract was that Deere would receive increased royalties from Jym Bag's increased sales. This argument fails because the Contract already gave Deere entitlement to royalties on all Deere-licensed products sold by Jym Bag. Indeed, it provided Deere with a 10% royalty and guaranteed Deere would be paid at least $15,000 per year in royalties.[7]

Jym Bag argues that it agreed to work harder to sell Deere-licensed products in exchange for Deere's agreement that the Contract could only be terminated for cause. However, the undisputed facts show that, prior to the lunch meeting in Moline, Jym Bag was already pouring resources into its Deere-licensed line of products and working to sell as many products as possible. Its Deere-licensed sales had steadily increased each year.

---

[7] Deere argues that the Contract required Jym Bag to use its best efforts to sell Deere-licensed products. It further argues that because Jym Bag was already required to use its best efforts, Jym Bag's promise to continue to use best efforts in order to increase Deere royalties could not be an additional benefit to Deere. The court finds that there is no explicit "best efforts" provision in the Contract. Although the court recognizes that there is "nearly always" an implied promise of performance in contracts that depend upon the efforts of a party, *see, e.g. Med. Assocs. Health Plan*, 2005 WL 2473661, at *6, here, the court rejects Deere's suggestion that the Contract contains an implied "best efforts" provision, because Deere was guaranteed royalties under the Contract. *See ParaData Computer Networks, Inc. v. Telebit Corp.*, 830 F. Supp. 1001, 1006 (E.D. Mich. 1993) (refusing to imply a duty on exclusive licensee to use best efforts to market the licensor's products when the licensor received a substantial licensing fee and prepaid royalties which protected it from the possibility that the licensee would do nothing to market the products).

There is no evidence showing Jym Bag increased its sales efforts or sales as a direct result of the statement made by Porter. The evidence shows the opposite, that is, Jym Bag had been working diligently since 1999 to steadily increase its Deere-licensed sales. For these reasons, the court finds Deere received nothing new in exchange for its alleged agreement to terminate only for cause. Consideration was lacking and there was no oral modification of the Contract.

Because the alleged oral modification involved indefinite terms and, alternately, because there was no consideration, the court finds no oral modification of the Contract occurred and, thus, Deere did not breach the Contract. Deere is entitled to judgment as a matter of law on Count I.

### 3. Waiver

Deere also argues that Jym Bag's breach of contract claim must fail as a matter of law because it waived its right to argue that the Contract was wrongfully terminated when Wagner signed the May 17, 2004 letter agreement and unequivocally agreed "that the license agreement will terminate on June 15, 2004." Citing the merger doctrine, Deere argues that this written agreement supersedes the alleged oral modification of the Contract. The court agrees.

"[W]hen an oral agreement precedes a written agreement on the topic, ordinarily [the court will find] the oral discussion merged into the written agreement." *Commercial Trust and Sav. Bank of Storm Lake v. Toy Nat'l Bank of Sioux City*, 373 N.W.2d 521, 523 (Iowa Ct. App. 1985). The intent of the parties should prevail and "the subsequent written agreement is the final expression when 'the terms thereof are inconsistent with the earlier agreement and intended to be substituted for it . . .'" *Id.* (citing *S. Tex. Land Co. v. Sorensen*, 202 N.W. 552, 553 (Iowa 1925)) (emphasis omitted).

In the May 17, 2004 letter agreement, Wagner, the President and majority stockholder of Jym Bag, clearly agreed that the Contract would terminate on June 15, 2004. According to the merger doctrine, the 2004 letter agreement supersedes the alleged oral modification which took place in early-2003 to mid-2003, because the subject of each agreement is the renewal provision of the Contract. The terms of each of the agreements are completely inconsistent—the first provides that the Contract can only be terminated for cause and the second provides that the Contract will be terminated on a date certain. Because Jym Bag subsequently agreed to the termination of the Contract, it cannot argue that Deere breached the oral agreement.

Jym Bag argues that the letter agreement was a bargain between the parties that "Deere would give Jym Bag a sell-off period until February 28, 2005 in exchange for Jym Bag adhering to the specific requirements of the sell-off period . . . ." It argues that Deere had already terminated the license in its letter dated April 19, 2004, and that Jym Bag was merely acknowledging the fact of termination in the letter agreement. Jym Bag skirts the fact that the letter agreement states: "This letter shall serve as an agreement between Deere & Company and Jym Bag Company, that the license agreement will terminate on June 15, 2004." Because Jym Bag agreed to the June 15, 2004 termination date when Wagner signed the letter agreement, Jym Bag waived its right to argue Deere breached the orally modified agreement.

For this additional reason, the court finds summary judgment is appropriate in favor of Deere on Count I of the Petition at Law.

### B. Count II - Jym Bag's Promissory Estoppel Claim

In Count II of the Petition at Law, Jym Bag alleges that, during the course of performing the Contract, Deere "stated to [Jym Bag] that [Deere] would not terminate the

[Contract] except for cause." Jym Bag argues it relied on the promise to its detriment and sustained damages because Deere wrongfully terminated the Contract on April 19, 2004.

Promissory estoppel is based on the theory that parties should be made liable for their promises even though no consideration existed, a requirement under contract law. *Kolkman v. Roth*, 656 N.W.2d 148, 152 (Iowa 2003). To prove promissory estoppel, Jym Bag must show:

> (1) a clear and definite promise; (2) the promise was made with the promissor's clear understanding that the promisee was seeking assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his or her substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only be enforcement of the promise.

*Id.* at 155; *see also Nat'l Bank of Waterloo v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989) (noting that the burden of proof to establish estoppel is on the plaintiff). Iowa law requires strict proof of each of these four elements. *Kokman*, 656 N.W.2d at 155. "Clearly, much more than mere nonperformance of a promise must be shown to obtain the benefits of promissory estoppel." *Id.* The Iowa Supreme Court has noted "in applying this doctrine [of promissory estoppel] each case must be decided in the light of its surrounding facts and circumstances. There can be no hard and fixed rule for determining when it is appropriate." *Johnson v. Pattison*, 185 N.W.2d 790, 795 (Iowa 1971).

The Iowa Supreme Court has examined the phrase "clear and definite promise":

> A "promise" is "a declaration . . . to do or forbear a certain specific act." *Black's Law Dictionary* 1213 (6th ed. 1990). A promise is "clear" when it is easily understood and is not ambiguous. *See Webster's Third New International Dictionary* 419 (unab. ed. 1993). A promise is "definite" when the assertion is explicit and without any doubt or tentativeness. *See id.* at 592.

*Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 50-51 (Iowa 1999). The Iowa Supreme Court has emphasized "clarity" and "inducement" with regard to prong one. *See Nat'l Bank of Waterloo*, 434 N.W.2d at 889 (summarizing Iowa cases and noting that "[t]his dual emphasis on clarity and inducement parallels the Restatement (Second) [of Contracts'] definition of an agreement for purposes of promissory estoppel as '[a] promise which the promisor should reasonably expect to induce action . . . on the part of the promisee"). Moreover, a representation, as opposed to a promise, is "'a statement . . . made to convey a particular view or impression of something with the intention of influencing opinion or action.'" *Schoff*, 604 N.W.2d at 51 (citing *Webster's Third New International Dictionary* 1926 (unab. ed. 1993)).

The alleged promise at issue here is Porter's statement to Wagner and Vancura: "I will tell you that unless you just totally screw up it won't be canceled" or "I would tell you that unless you just totally screw up, it's an automatic thing to renew." As an initial matter, the court has serious reservations regarding whether this statement constitutes a promise. It could just as easily be classified as a representation by Porter regarding his impression that Jym Bag was a secure Deere licensee. However, the court need not resolve the issue of whether the statement is a promise versus a representation. If it was a promise, it was not a "clear and definite" promise, and, accordingly, Jym Bag cannot, as a matter of law, meet the first promissory estoppel element. As a matter of law, the statement Porter made about not cancelling the contract does not clearly and definitely encompass a promise that the Contract would be automatically renewed. *See Denner v. Deere & Co.*, No. 03-2057, 2005 WL 1532607, at *8-9 (N.D. Iowa Jan. 7, 2005) (granting summary judgment on a promissory estoppel claim for failure to establish a clear and definite promise and determining that an employer's statement to a potential employee

that "everything is clear" for the employment to commence was not a clear and definite promise that the employer would not fire the employee based upon his criminal record where there was no evidence presented that the employer was referring to the employee's criminal record or understood that the record involved theft from the employer), *aff'd*, No. 05-1371, 2005 WL 2293473 (8th Cir. Sept. 21, 2005) (unpublished).

The court finds the statement made by Porter was merely a casual assurance over lunch, rather than a clear and definite promise. In light of the use of the term "totally screw up," the allegedly modified Contract is anything but clear. *See, e.g., Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101, 111 (2d Cir. 1985) (Wyatt, J., dissenting) (arguing that the legal term "just cause" was erroneously used to instruct the jury where the statement made by the prospective employer to the prospective employee was that the latter would not be fired unless he "screwed up badly" or "totally screws up"). In this context, the term "totally screw up" could refer to a myriad of things such as Jym Bag's failure to send Deere royalties, Jym Bag's use of an unlicensed design on t-shirts, a Jym Bag representative's failure to return a phone call to Deere or the production of poor-quality Deere-licensed products. *See Denner*, 2005 WL 1532607, at *8 (finding the employer's statement that "[you] passed all my tests, everything is clear" was an ambiguous statement and explaining that there was no evidence in the record showing that the employer knew he was discussing the potential employer's criminal record, rather than some other part of the application procedure). Even Jym Bag representatives agree that the term "totally screwed up" was vague. When asked what his understanding was about the "promise" made by Porter, Vancura testified: "[W]e felt that – [Porter's] feeling was that unless we just, again, totally screwed up on something, whether we, you know, presented Deere in a lewd and crude way or whatever, this was an automatic renewal for us." The meaning of the phrase "totally screw up" in this context is not clear. There was

no clear or definite promise, and, therefore, Deere has shown that there is no genuine issue for trial, which Jym Bag failed to rebut. As a matter of law, Deere is not subject to liability to Jym Bag on the theory of promissory estoppel.

Accordingly, the court grants Deere's Motion on Count II of the Petition at Law.

## VI. CONCLUSION

For the foregoing reasons, Deere's Motion for Summary Judgment on Counts I and II of the Petition at Law (docket no. 16) is hereby **GRANTED.**

**IT IS SO ORDERED.**

**DATED** this 31st day of October, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA